UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

WILLIAM PAUL BRINGMAN,

    Plaintiff,

                                                 Case No. 2:15-cv-628

v.

                                                 CHIEF JUDGE EDMUND A. SARGUS, JR.
                                                 Magistrate Judge Kimberly A. Jolson

VILLAGE OF FREDERICKTOWN,
OHIO, *et al.*,

    Defendants.

**OPINION AND ORDER**

This matter is before the Court for consideration of the Motion for Summary Judgment of Police Officer Kyle Johnson ("Officer Johnson") and Police Chief Roger Brown ("Chief Brown") (ECF No. 39); and the Motion for Summary Judgment of Deputy Sheriff Kevin Durbin ("Deputy Durbin") and the Board of Commissioners of Knox County, Ohio ("Commissioners") (ECF No. 42). Plaintiff has filed memoranda in opposition to each (ECF Nos.43, 46), and Officer Johnson and Chief Brown have filed a reply memorandum (ECF No. 45). For the reasons that follow, the Court **GRANTS** the motions.

                                      I.      **Background**

On February 27, 2013, William Paul Bringman ("Plaintiff"), was arrested for domestic violence related to an incident involving his then-wife, Barbara Jean Bringman. (Compl. ¶ 9; ECF No. 1.) The arresting officers were Officer Johnson, a Village of Fredericktown police officer, and Deputy Durbin, a Knox County deputy sheriff. (*Id.*) After being placed under arrest, Plaintiff was taken to the Knox County Jail. He was released later that same day. (*Id.* ¶ 15.) On February 18, 2015, Plaintiff filed a complaint against Johnson, Durbin, and the

following additional defendants: the Village of Fredericktown ("Fredericktown"); Jerry Day, the former Fredericktown Police Chief; Roger Brown, the current Fredericktown Police Chief; the Board of Commissioners of Knox County, Ohio; John Doe I, the Knox County Sheriff; and John Doe II, a Knox County Deputy Sheriff. (Compl.; ECF No. 1.) Plaintiff asserts claims under 42 U.S.C. §1983, claiming that he was falsely arrested and imprisoned in violation of the Fourth and Fourteenth Amendments. The parties have completed briefing on the motions, which are ripe for disposition.

The following facts are not in dispute. On February 27, 2013, Plaintiff woke up around 3:30 a.m. He "was not sleeping well" and decided to get dressed and go to his office before court.[1] As he tried to leave, his wife, Barbara Bringman, "would not get out of the way." According to Mr. Bringman, she "grabbed at his testicles" and he "shoved her out of the way of the door" and she fell to the kitchen floor. Mrs. Bringman's daughter, Andrea Weller, "heard the fall," and came in and yelled at him to leave. (*See* Pl's Statement; ECF No. 43.) Officer Johnson was on patrol that morning, and received a dispatch call regarding a 911 call reporting a domestic disturbance. (Tr. Trans. at p. 20; Officer Johnson Aff. at ¶ 2; ECF No. 39, Exh. A.)[2] The dispatcher relayed that a distraught woman called, that someone was on the floor, and that the husband had left the house. (*Id.* at 20-21.) When Officer Johnson arrived at the residence, he was met by Mrs. Bringman, and her daughter, Ms. Weller. (*Id.* at 22.) Deputy Durbin also heard the dispatch, and arrived while Officer Johnson was talking with Mrs. Bringman. (*Id.* at 57.) Mrs. Bringman was visibly upset and crying, and she appeared to be afraid. She told Officer

---

[1] Plaintiff, an attorney, is representing himself in this case *pro se.*
[2] Exhibit A is the transcript of the trial proceedings in the Mount Vernon Municipal Court, Ohio, Case No. 12CRB206, *State of Ohio v. William Bringman.* Mr. Bringman was acquitted.

Johnson that she regretted calling the police because she was going to be in trouble with her husband. (*Id.* at 23; Officer Johnson Aff. ¶¶ 4, 5.)

Mrs. Bringman stated that she had confronted Plaintiff with her suspicions that he was having an affair, and they had an altercation. (*Id.* at 22.) She told the officers that during the altercation, Plaintiff shoved her in the back, causing her to fall to the ground. (*Id.* at 22-23; Officer Johnson Aff. ¶ 3.) Mrs. Bringman showed Officer Johnson and Deputy Durbin a cut on her left elbow, and stated that her left wrist was also injured in the fall. (*Id.* at 22-23; Officer Johnson Aff. ¶ 4.) Officer Johnson observed that Mrs. Bringman was walking with a limp, and she said it was caused by the physical confrontation with Plaintiff. (*Id.* at 30-31.) Ms. Weller told Officer Johnson that she heard "yelling and a commotion" in the kitchen, but did not see it. However, she came into the kitchen and saw her mother lying on the floor, and her stepfather standing over her mother. When Ms. Weller said she was calling the police, Plaintiff left the house. (*Id.* at 31-32.) Officer Johnson obtained written statements from Mrs. Bringman and Ms. Weller that accused Plaintiff of causing Mrs. Bringman physical harm. (*Id.* at 32; Officer Johnson Aff. at ¶¶ 6-7.) Officer Johnson decided to investigate further by talking to Plaintiff. (*Id.* at 32.)

Officer Johnson and Deputy Durbin met with Plaintiff in his office, and Plaintiff acknowledged that he had a physical altercation with Mrs. Bringman in their home that morning. (Tr. Transcript at 33, 37.) Plaintiff said he was trying to exit the home through the kitchen door, but Mrs. Bringman blocked the door way. (*Id.* at 33.) Plaintiff claimed that he did not intend to hurt Mrs. Bringman, but acknowledged that he knowingly shoved her. (*Id.* at 34-35, 151-152.) Plaintiff wrote a detailed statement for Officer Johnson, describing the escalation of the interaction, including Mrs. Bringman's actions in "grabbing his testicles" and trying to block him

3

from the door way, and admitting that he "shoved her out of the way" and she "fell down on her left side on the kitchen floor in front of the sink." (Pl. Statement; ECF No. 43.) After hearing Plaintiff's version of the events, Officer Johnson determined that, based on the totality of the circumstances, an offense of domestic violence was probably committed by Plaintiff, and he made the decision to place Plaintiff under arrest for that offense. (*Id.* at 47; Officer Johnson Aff. ¶ 10.) Chief Brown agreed with Officer Johnson's decision to make the arrest. (Ex. B, Chief Brown Aff. ¶ 4.) Deputy Durbin did not participate in the decision to make the arrest, but transported Plaintiff to the Knox County Jail in his cruiser, where he turned Plaintiff over to the custody of jail deputies. (Compl. ¶¶ 13, 14; ECF No. 1; Tr. Transcript, at 61.) Plaintiff was released on bond around noon on the same day. (*Id.* ¶ 15.)

Plaintiff filed the instant Complaint on February 18, 2015, alleging that his arrest violated the Fourth and Fourteenth Amendments of the Constitution, and was done maliciously, in violation of 42 U.S.C. § 1983. (Compl., ECF No. 1.)[3] Plaintiff also sued the Board of Knox County Commissioners. (Compl. ¶ 6; ECF No. 1.) The three Knox County Commissioners aver that they were not involved in or cognizant of Plaintiff's arrest, nor did they "consent to, approve or ratify the actions of any law enforcement official concerning Mr. Brigman's arrest or detention." (*See* Aff. Comm'r Teresa Bemiller, Exh. B ¶3; Aff. Comm'r Thom Collier, Exh. C ¶3; Aff. Comm'r Roger Reed, Exh. D ¶; ECF No. 42.) The plaintiff has produced no evidence to the contrary.

---

[3] Plaintiff also included a claim that the Village of Fredericktown; former Fredericktown Police Chief Jerry Day; and current Fredericktown Police Chief Brown failed to properly train and supervise the officers. The Court dismissed this claim on November 30, 2015. (Opinion; ECF No. 37.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). In deciding a summary judgment motion, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348 (1986). The judge is not to determine the truth of the matter, but to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505 (1986).

## III. ANALYSIS

Plaintiff brings this civil rights action under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

In order to recover under a Section 1983 claim, a plaintiff must prove that the defendant, while acting under the color of state law, violated rights secured to the plaintiff by the Constitution or laws of the United States. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Plaintiff specifically alleges that his arrest for domestic violence violated the Fourth Amendment of the U.S. Constitution. The Fourth Amendment states, in pertinent part, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. "[I]t is well established that any arrest without probable cause violates the Fourth Amendment." *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003). Thus, the central issue in the case is whether Officer Johnson had probable cause to arrest Plaintiff.

"A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *United States v. Pearce*, 531 F.3d 374, 380-81 (6th Cir. 2008). Plaintiff contends that the issue of probable cause is a jury question. The Sixth Circuit has held that the existence of probable cause is generally a jury question unless there is only one reasonable determination possible. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995).

In *Scott v. City of Bexley*, 11 Fed. App'x 514 (6th Cir. 2001), a case cited by Plaintiff and Defendants, the Sixth Circuit examined the question of probable cause in a case involving Ohio's domestic violence statute. In affirming the District Court's grant of summary judgment, the Sixth Circuit explained the assessment of probable cause in these terms:

> [W]e start with a few general principles. The most important of these is that the Fourth Amendment does not require that a police officer *know* a crime has

6

>occurred at the time the officer arrests or searches a suspect. *See United States v. Barrett*, 890 F.2d 855, 861 (6th Cir. 1989). The Fourth Amendment, after all, necessitates an inquiry into probabilities, not certainty. The Supreme Court has made clear that there is no precise formula for determining the existence or nonexistence of probable cause; rather, a reviewing court is to take into account the 'factual and practical considerations of everyday life' that would lead a reasonable person to determine that there is a reasonable probability that illegality has occurred or is about to occur. *See Illinois v. Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). There is, of course, a requirement that the officers be able to articulate concrete facts from which they infer a probability that illegality has occurred. As we have consistently emphasized, however, while officers must show more than mere suspicion, the probable cause requirement does not require that they possess evidence sufficient to establish a prima facie case at trial, much less evidence sufficient to establish guilt beyond a reasonable doubt. *See, e.g., United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990).
>
>The real question, then, is this: at what point does a body of evidence amassed by a police officer against a particular suspect cross the line from merely raising a suspicion to establishing probable cause? In many respects, this raises a difficult epistemological problem. As Descartes famously observed, to the skeptic, any proposition – no matter how seemingly certain – carries with it a degree of doubt. But judges are not philosophers. To find probable cause, the law does not require that we rule out every conceivable explanation other than a suspect's illegal conduct. Instead, we need only consider whether there are facts that, given the 'factual and practical considerations of everyday life,' could lead a reasonable person to believe that an illegal act occurred or is about to occur. *See Gates*, 462 U.S. at 231, 103 S.Ct. 2317.

*Scott v. City of Bexley*, 11 Fed. App'x 514, 518, citing *United States v. Strickland*, 144 F.3d 412, 415-16 (6th Cir. 1998).

When a Section 1983 claim is predicated on an allegation of false arrest, false imprisonment, or malicious prosecution, the claim must fail if probable cause for the arrest existed. *Id.* at 516, citing *Hansel v. Bisard*, 30 F.Supp.2d 981, 985-86 (E.D. Mich. 1998). To determine whether an officer had probable cause to arrest an individual for a violation of a state statute, courts first look to the state law defining the offense. *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). The arrest at issue in the case *sub judice* was for domestic violence, in violation of Ohio Rev. Code § 2919.25(A).

7

The Sixth Circuit addressed the issue of probable cause for arrest for a violation of Ohio's domestic violence statute in *Thacker v. City of Columbus*, 328 F.3d 244 (6th Cir. 2003). In *Thacker*, as in this case, the Plaintiff was arrested for domestic violence pursuant to Ohio Revised Code § 2919.25(A), which states: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." Under that statute, a "household member" includes a "spouse, a person living as a spouse, or a former spouse of the offender." Ohio Rev. Code § 2919.25(E). As the Court explained, Ohio has a "preferred arrest" policy in domestic violence matters:

> Ohio has a preferred arrest policy in domestic violence situations. In particular, Ohio law provides that where a peace officer has 'reasonable grounds to believe the offense of domestic violence … has been committed and reasonable cause to believe that a particular person is guilty of committing the offense, it is the preferred course of action in this state that the officer arrest and detain that person. Ohio Rev. Code § 2935.03(B)(3)(b); *see Scott v. City of Bexley*, 11 Fed. Appx. 514, 517, 2001 WL 599711 (6th Cir. 2000) (unpub'd.)
>
> 'The Fourth Amendment does not require that a police officer *know* a crime occurred at the time the officer arrests or searches a suspect.... The Fourth Amendment, after all, necessitates an inquiry into probabilities, not certainty.' *United States v. Strickland,* 144 F.3d 412, 415 (6th Cir.1998). Thus, for probable cause to arrest Thacker to exist here, the officers would not have to have proof of each element of a domestic violence offense, but would have to believe that a probability existed that he committed the offense.

*Thacker*, 328 F.3d at 256.

In this case, as in *Thacker*, the statement of the alleged victim, Mrs. Bringman, that Plaintiff had abused her "is sufficient to establish probable cause." *Id.* at 257, citing *Klein v. Long*, 275 F.3d 544, 551-52 (6th Cir. 2001) (explaining officers need not interview an alleged offender where a victim claims that she was abused if such an interview would, at most, produce an exculpatory denial of wrongdoing). Here, Officer Johnson relied on more than just Mrs. Bringman's statement in this case – he also relied on Plaintiff's admission that he shoved his

8

wife during a domestic altercation, and Ms. Weller's statement corroborating Mrs. Bringman's account. In addition to these statements, Officer Johnson observed injuries to Mrs. Bringman's left elbow and wrist. (Officer Johnson Aff. ¶ 4.) In assessing whether Officer Johnson had sufficient information to believe that a probability existed that Plaintiff committed the offense, the Court also takes into account Ohio's preferred arrest policy in domestic violence matters. Based on the totality of the circumstances presented to Officer Johnson in this case, Officer Johnson had reasonable grounds to determine that probable cause existed to arrest Plaintiff. Taking as true all of the facts as professed by Plaintiff, the evidence is insufficient for a reasonable jury to find that Officer Johnson lacked probable cause for the arrest.

The finding of probable cause defeats any Section 1983 claim for false arrest, false imprisonment, and/or malicious prosecution. *Scott*, 11 Fed. App'x at 516 (6th Cir. 2001). Where there is no constitutional violation, the derivative claims based upon false arrest must also fail. *Id.* at 516, 519. Therefore, the Defendants' Motions for Summary Judgment are **GRANTED**.

While this Court may, in its discretion, retain supplemental jurisdiction over pendent state law claims after the federal claims have been dismissed, such state law claims usually should also be dismissed. *See Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996). Because the Court in this Opinion and Order disposes of all of the Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3). Consequently, Plaintiff's remaining state law claims are dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment of Police Officer Kyle Johnson ("Officer Johnson") and Police Chief Roger Brown ("Chief Brown") (ECF No. 39); and the Motion for Summary Judgment of Deputy Sheriff Kevin Durbin ("Deputy Durbin") and the Board of Commissioners of Knox County, Ohio ("Commissioners") (ECF No. 42) are **GRANTED.** Further, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, which are dismissed without prejudice. The Clerk is directed to close this case.

**IT IS SO ORDERED.**

10-13-2016
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**